# CHARLESTON.

## STEWART v. OHIO RIVER R. CO.

Submitted January 15, 1895—Decided February 2, 1895.

1. MASTER AND SERVANT—ORDINARY HAZARD.
    When a servant enters into the employment of a master, he assumes all the ordinary hazards incident to the employment, whether the employment be dangerous or otherwise.

2. MASTER AND SERVANT—NEGLIGENCE—EMPLOYMENT.
    The test of liability is the negligence of the master, not the danger of the employment, though the danger of the employment may determine the ordinary care required in the case.

3. MASTER AND SERVANT—NEGLIGENCE.
    The mere fact of injury received raises no presumption of negligence on the part of the master.

4. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.
    When a servant willfully encounters dangers which are known to him, the master is not responsible for an injury occasioned thereby.

5. MASTER AND SERVANT—DILIGENCE AND CARE.
    A servant having knowledge of danger about him must use diligence and care in protecting himself from harm.

6. MASTER AND SERVANT—PATENT RISKS.
    An employer does not impliedly guarantee the absolute safety

of his employes. In accepting an employment, the latter is assumed to have notice of all patent risks incidental thereto, or of which he is informed, or of which it is his duty to inform himself, and he is further assumed to undertake to run such risks.

VINSON & THOMPSON for plaintiff in error, cited 36 W. Va. 397; Bish. Non-Cont. Law, § 665; 100 U. S. 213; 129 Mass. 268; 45 Am. Rep. 598.

W. W. MARCUM and MARCUM, PEYTON & MARCUM for defendant in error, cited 30 W. Va. 798.

ENGLISH, JUDGE:

This was an action of trespass on the case brought on the 17th day of June, 1893, in the Circuit Court of Wayne county, by T. H. Stewart against the Ohio River Railroad Company, to recover ten thousand dollars damages, to which the plaintiff claimed to be entitled by reason of injuries received by him in consequence of being thrown from a hand car on which he was riding and helping to operate, which accident he claims was caused by the negligence of the section foreman, who was riding on the same hand car, in suddenly applying the brakes, thereby causing said hand car to suddenly stop, which resulted in throwing the plaintiff off in front of the hand car, and in his being run over thereby. The defendant pleaded not guilty, and issue was thereon joined, and the cause was submitted to a jury, and after all the evidence was heard the defendant demurred thereto, and the plaintiff joined therein, and the jury, in pursuance of the direction of the court, ascertained the plaintiff's damages to be five thousand dollars, subject to the opinion of the court upon the defendants demurrer to the evidence; and upon consideration the court overruled said demurrer, and the defendant also moved the court to set aside said verdict and finding of the jury, because the damages assessed were excessive and not warranted by the evidence; which motion the court overruled, and the defendant excepted, and judgment was rendered upon said verdict, and the defendant obtained this writ of error.

It appears from the testimony in the case that the plain-

tiff had been in the employ of the defendant company a month, or a little over, as a section hand, and that he and other hands were in the habit of traveling to and from their work on the track with Mr. Ellis, the section foreman.

On the occasion when this injury was sustained, the section hands had finished their day's work, and seven of them, including the foreman, Ellis, got upon the hand car to return to the tool house. It was their custom to start from this tool house in the morning and return to it in the evening, and the plaintiff was in the habit of assisting at the levers in propelling the car.

According to the plaintiff's own statement as to his position on the hand car when it started for the tool house on that evening, he was in the center of the car. His heels were kind of over the edge, for he lost his balance, and didn't have any chance to support himself, and fell in front of the hand car. He was riding backwards, and, at the time he fell off, was helping to run the car, and had hold of the lever, and when asked, "Did you see Mr. Ellis at the time he put the brake on?" answered, "I may have seen him, but don't remember it." The plaintiff further states that he was riding in front of the center, the brake was on the right-hand side, and the foreman, Ellis, was in an arm's reach of him. The brake was applied by pressing the foot upon the lever, and in answer to the question, "Where was the car, with reference to the tool house when Mr. Ellis applied the brake?" the plaintiff stated that the car had got past the tool house when he put the brake on. He knew it was the intention to stop the hand car at the tool house when they started home from their work; he was standing in such a position that he could see the movements of the foreman, Ellis, and had hold of the lever.

For eight or ten days he had been going out with this gang of section hands from the tool house in the morning and returning to it in the evening, and, knowing that the car was to be stopped at the tool house, what was the necessity for the foreman, under these circumstances, to announce the fact that he was going to apply the brakes, having arrived at the tool house, and all hands being aware that it was the

custom and intention on that occasion to stop there? It must be presumed the men stopped working their levers, and, in fact, J. W. Henderson, a witness for the plaintiff, when asked who stopped the car, answered, "Mr. Ellis stopped all he could, and I pulled up on the lever. Every time she would go to go down, I would hold it up." And in reply to the question, "Did · he [meaning Ellis] give any warning to the crew that he was going to stop her?" stated, "No, sir; I did not hear it. They all knew they wanted to stop there at the tool house." He also stated that it was not usual, when they went to stop there, to say, "I am going to put on the brake." Everybody knew that the brake was going to be put on at the tool house; that no one had any particular place to work at the levers; that every fellow got his place, catch as catch can. This witness also states that he saw the plaintiff falling; he had let loose of the lever; and he thinks his foot slipped right off, and then his other foot caught the car, and it just doubled him right up and ran over him. If, then, the law should regard this foreman or section boss as the vice principal or *alter ego* of the defendant company on this occasion, what did he say or do that would render the defendant liable? The plaintiff took his position on the hand car without any direction from the foreman. When he did so he was fully aware of the destination of the car, he knew where the brakes would be applied, and the foreman, who stood at the brake, was in his immediate presence, so that nothing but his negligence prevented him from having notice of his every movement; he was himself assisting in giving speed to the car, and must have known the swiftness with which it was moving by the action of the levers, and yet he stood, according to his own statement, with his heels projecting from the platform, at the very moment the tool house was reached and the brakes applied, and when he knew they would be applied.

What negligent act could be attributed to the foreman on this occasion is difficult to discover from the evidence. The plaintiff's witness Henderson says: "We always went pretty fast," and when asked, "Was there any difference be-

tween the rate of speed on that and on any other evening?"
replied, "I think we went a little faster on account of the en-
gine following us." But no witness states that the speed on
that evening was increased by the direction of the foreman,
and the speed was controlled by the action of the plaintiff
and his fellow servants, who were working the levers. The
same witness was asked, "When you were coming into the
tool house was that the usual way of stopping the car?" and
replied, "Yes, sir"; and when asked, "Stop suddenly?" re-
plied, "Stopped as quick as we could." There was nothing,
then, that the foreman did, except to use the brake in stop-
ping the car, and the plaintiff's own witness tells the jury
that the hand car was stopped in the usual way on this occa-
sion, and the plaintiff appears to have ridden to the tool
house often enough on this hand car to be acquainted with
the manner of stopping it.

In the case of *Knight* v. *Cooper*, 36 W. Va. 232 (14 S. E. Rep.
999) this Court held that "when a servant enters into the em-
ployment of a master, he assumes all of the ordinary hazards
incident to the employment, whether the employment be
dangerous or otherwise;" that "the test of liability is the
negligence of the master, not the danger of the employment,
though the danger of the employment may help to determine
the ordinary care required in the case;" that "the mere fact
of injury received raises no presumption of negligence on
the part of the master;" that "when a servant willfully en-
counters dangers which are known to him, the master is not
responsible for an injury occasioned thereby;" that "a ser-
vant having knowledge of danger about him must use dili-
gence and care in protecting himself from harm." In the
case of *Engine Works* v. *Randall*, 100 Ind. 293, the supreme
court of that state holds that "where both master and ser-
vant have equal knowledge of the danger of the service re-
quired, and the means of avoiding it, and the servant, while
engaged in the performance of the work he is set to do, is in-
jured by reason of his own inattention and negligence the
master is not liable." Bailey, in his work on Master's lia-
bility for Injuries to Servant (page 219) in speaking of the
duties of the master, states the law thus: "He must not only

give the servant warning of danger, but he must also give him such instruction as will enable him to avoid injury, unless both the danger and means of avoiding it while he is performing the service required are apparent. But he is not bound to anticipate extraordinary, unusual, or improbable occurrences which involve inattention on the part of the servant." This Court held in the case of *Johnson* v. *Railway Co.*, 38 W. Va., page 207, (18 S. E. Rep. 573) that "an employe having knowledge of the danger about him must use prudence and care to protect himself from harm, and if he willfully and imprudently encounters such danger the employer is generally not responsible for the injury caused thereby." Patterson, in his work on Railway Accident Law, section 316, states the law as follows: "There is no implied obligation upon the part of the master to indemnify the servant against the ordinary risks of the service, and the servant, when injured, can only recover upon proof that the master knew of a danger which was unknown to the servant, and which the master did not make known to him."' So in the case of *Sykes* v. *Packer*, 99 Pa. St. 465, it was held that "an employer does not impliedly guaranty the absolute safety of his employes. In accepting an employment, the latter is assumed to have notice of all patent risks, incidental thereto, or of which he is informed, or of which it is his duty to inform himself, and is further assumed to undertake to run such risks;" and also in the case of *Naylor* v. *Railway Co.*, 53 Wis. 661 (11 N. W. Rep. 24) it was held that "if a servant knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for such injury merely on the ground that there was a safer mode for conducting the business, the adoption of which would have prevented the injury." It is true that the hand car might have been run slower, and if such had been the case the injury might not have resulted, but the defendant in error can not be heard to complain of the speed of the car for two reasons: First, because he, without any directions from the foreman, so far as appears from the evidence, was assisting in working the levers which gave the car its velocity; and, secondly,

because he had been working as a section hand on the road for a month and, for eight or ten days had been traveling upon this hand car to and from his work, and knew the speed with which it traveled, and, possessing this knowledge, he voluntarily took a dangerous position upon the car, standing on the front edge of the platform, facing to the rear, and with his heels projecting over the edge of the platform. Occupying this position, and being acquainted with the facts in regard to the speed of the car, and its sudden manner or stopping when it reached the tool house on each successive day, he must be regarded as assuming the risk attendant thereon, and, the evidence disclosing no negligent act on the part of the foreman, my conclusion is that the Circuit Court erred in overruling the defendant's demurrer to the evidence and in rendering judgment upon the verdict.

The judgment complained of is therefore reversed, and, this Court proceeding to render such judgment as the court below should have rendered, the demurrer to the plaintiff's evidence is sustained, and judgment is rendered for the defendant, with costs, *etc.*