# CHARLESTON.

## Young v. West Virginia C. & P. R'y Co.

Submitted January 28, 1896—Decided April 4, 1896.

1. MASTER AND SERVANT—ASSUMPTION OF RISK—FELLOW SERVANT.

   A party who enters the service of a railroad company as a brakeman takes upon himself the natural and ordinary risks and perils incident to the performance of such services, including the perils arising from the carelessness and negligence of those who are in the same employment as fellow servants.

2. MASTER AND SERVANT—FELLOW SERVANT.

   If one brakeman on a freight train is injured by the carelessness and negligence of another brakeman upon the same train in the performance of his ordinary duties, they are fellow servants, and the railroad company is not liable for the injury thus occasioned.

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—FELLOW SERVANT.

   Where a brakeman, in attempting to withdraw the coupling pin and uncouple a car from the engine and tender, stands with one foot on the bumper belonging to each car, and, with his lantern in his left hand, leans forward, and reaches with his right hand to withdraw the coupling pin, which has already been withdrawn by a fellow brakeman, and the cars separating cause him to fall between the cars, and to be run over and injured, he must be regarded as negligent, and his negligence must be considered the proximate cause of his injury.

C. W. DAILEY and L. D. STRADER for plaintiff in error.

I.—*On variance.*—23 W. Va. 618; 16 W. Va. 245, 263; 10 S. E. R. 356; 12 S. E. R. 101, 1020; 28 Am. & Eng. Enc. Law, p. 59 & note 5; 15 W. Va. 628.

II.—*Proximate cause.*—17 W. Va. 190; Patterson's R'way Accident Law, 9-12; Baily, on Master & Servant, 425 427; Sher. & Red. on Neg. Vol. 1, § 26; Bishop on Non. Con. Law, § 457.

III.—*Fellow servants.*—36 W. Va. 411; 34 W. Va. 273, 274;

McKinney, on Fellow Servants, § 23 & page 55; 37 W. Va. 502, 504; 21 S. E. R. 1028, 1029.

IV.—*On competency of testimony.*—13 S. E. R. 459, 460; Rogers, Ex. Test. p. 13, § 5.

V.—*On contributory negligence.*—27 W. Va. 145; 41 Am. & Eng. R. R. Cas. 327-329.

VI.—*Assumption of risks.*—41 W. Va. 293; p'ts 2, 3, 4 & 5 of syl.; 33 W. Va. 108; 34 W. Va. 572.

VII.—*Rule as to minor servants, same as in case of adults.*— Beach. Con. Neg. § 357, 362.

VIII.—*Duty of servant to inform himself and act with eyes open.* —Beach, Con. Neg. § 369.

A. B. PARSONS and DAYTON & DAYTON for defendant in error:

I.—*Demurrer to evidence.*—8 W. Va. 515; 6 W. Va. 508; 18 W. Va. 299; 18 W. Va. 376; 30 W. Va. 27; 12 W. Va. 116; 18 W. Va. 579; 20 W. Va. 46; 21 W. Va. 709; 26 W. Va. 345; 23 W. Va. 229; 26 W. Va. 455.

II.—*Conductor vice principal and not co-servant with brakeman.* —28 W. Va. 610; 36 W. Va. 397; 112 U. S. 377; 84 Va. 713; 86 Va. 165; 78 Va. 745; 81 Va. 71; 24 W. Va. 37; 112 U. S. 377, 390; 5 Sup. Ct. 184; 34 W. Va. 261; 39 W. Va. 86.

III.—*What is negligence.*—28 W. Va. 570; 3 Lawson, R. & R. § 1215; 2 Thomp. Neg. § 1239; 61 Pa. St. 59; 17 W. Va. 190.

IV.—*Master's duty and liability to his servants.*—44 Mo. 488; 28 W. Va. 617; 69 Ill. 461; 10 Am. R. & C. Rep. 264; 4 Am. R. & C. Rep. 1; 24 At. Rep. 134; 56 Mo. App. 630; 4 Am. R. & C. Rep. 239; 8 Am. R. & C. Rep. 728; 126 N. Y. 544; 84 Ga. 420; 4 Am. R. & C. Rep. 385; 21 S. E. Rep. 342, syl. 5; 83 Mich. 281; 53 N. Y. 549; 39 Fed. Rep. 174; 84 Va. 679, 713; 78 Va. 645, 745; 19 S. E. Rep. 261, 652; 88 Ga. 16; 92 Ga. 95; 111 N. C. 482; 31 Kan. 586; 87 Ga. 631; 88 Va. 648, 971; 88 Ga. 19; 30 W. Va. 798; 37 W. Va. 606; 38 W. Va 273, 456, 570; 27 W. Va. 145.

V.—*Release no bar.*—2 Q. B. (1894) 65; 12 S. E. Rep. 600; 160 Mass. 447; 57 N. W. Rep. 425; 51 Iowa, 68; 109 Ill.

120; 127 Mass. 86; 18 Kans. 58; 50 N. Y. 670; 28 N. E. Rep. 593; 78 Tex. 314; 16 So. Rep. 379; 40 Pac. Rep. 609; 83 Wis. 527.

VI.—*Railroad experts could testify.*—Redfield R'y, Vol 1, top page 599 (6th Ed.) Pt. vi, sec. vi, S. 134; 17 S. E. Rep. 732; 36 W. Va. 212; 35 W. Va. 500; 87 Ga. 631.

VII.—*Motion to exclude evidence properly overruled.*—38 W. Va. 456, 645; 36 W. Va. 96; 35 W. Va. 389; 30 W. Va. 228; 8 W. Va. 568; 25 W. Va. 692; 28 W. Va. 333; 30 W. Va. 27; 139 U. S. 551.

VIII.—*Damages not excessive.*—39 W. Va. 86; 29 W. Va. 777; 16 W. Va. 297; 21 W. Va. 530; Deering, Neg. § 424; 18 Ill. 418; 31 Kans. 197; 64 Barb. 439; 51 Ga. 582; 2 Am. & Eng. R. Cas. 70; 5 Id. 264; 34 W. Va. 232; 19 W. Va. 350; 76 N. Y. 549; 102 N. Y. 280; 11 W. Va. 17.

ENGLISH, JUDGE:

On the 8th day of December, 1891, Charles W. Young brought an action of trespass on the case in the Circuit Court of Tucker county against the West Virginia Central & Pittsburg Railway Company, claiming damages to the amount of thirty thousand dollars on account of personal injuries received by him while acting as brakeman on one of defendant's freight trains. The defendant demurred to the plaintiff's declaration, and the same was overruled by the court. The plea of not guilty was interposed, and issue was thereon joined, and on the 10th day of March, 1894, the defendant tendered and asked leave to file four special pleas in writing, numbered 1, 2, 3, and 4, which were objected to, and the objections overruled. The pleas were filed, and the plaintiff excepted, and thereupon the plaintiff replied generally to said four pleas, and also tendered two special replications, numbered 1 and 2, to said four pleas, to the filing of which the defendant objected. The court overruled the objection, and allowed said special replications to be filed, and the defendant excepted. The defendant rejoined generally to said special replication No. 2, and asked leave to file a special rejoinder in writing to said special replication No. 1, to which the plaintiff objected,

and the objection was sustained, and the defendant excepted, and tendered its bill of exceptions No. 1, setting forth said special rejoinder, which was signed, sealed, and made a part of the record. Said special pleas Nos. 1, 2, 3 and 4, and said special replies Nos. 1 and 2, read as follows:

"Defendant's Special Plea No. 1. For further plea in this behalf the defendant says that the plaintiff ought not to have and maintain this, his action, because, as the defendant avers, that on the 6th day of June, 1891, the said plaintiff received the sum of $239.17 on account of the injuries of which he complains in this action, $164.17 of which was paid to him from what is known as the 'West Virginia Central Relief Fund,' which is a fund raised for the benefit of the employes of the defendant company injured while in the discharge of their duties as such employes, to which fund said defendant was a large contributor, and $75 of which amount was paid directly by the defendant; and on the day aforesaid the plaintiff, in writing, acknowledged the receipt of said sums of money in consideration of the payment of the same to him, released the said defendant from all claims and demands for damages, indemnity, or other form of compensation on account of the injuries complained of in his declaration in this action, and waived any and all claims he might have or be supposed to have then or thereafter as growing out of such injuries; and this the said defendant company is ready to vertify."

"Defendant's Special Plea No. 2. For further plea in this behalf the defendant says the plaintiff ought not to have and maintain this, his action, because the defendant avers that on the 6th day of June, 1891, the said plaintiff received the sum of $239.17 on account of the injuries of which he complains in this action from the said defendant company, and on the date aforesaid the plaintiff, in writing, acknowledged the receipt of said sum of money, and in consideration of the payment of the same to him released the said defendant from all claims and demands for damages, indemnity, or other form of compensation on account of the injuries complained of in this declaration in this action, and waived any and all claims he might have or be supposed to have then or thereafter against the said defendant as grow-

ing out of said injuries, and this the said defendant company is ready to verify."

"Defendant's Special Plea No. 3.  For further plea in this behalf the defendant says the plaintiff ought not to have and maintain this, his action, because the defendant avers that on the 6th day of June, 1891, the said plaintiff received the sum of $239.17 on account of the injuries of which he complains in this action, which sum of money was paid to him from what is known as the 'West Virginia Central Relief Fund,' which is raised for the benefit of the employes of the defendant company injured while in the discharge of their duties as such employes; to which fund the said defendant was a large contributor, which amount was paid for and on behalf of the defendant company to the said plaintiff; and on the day aforesaid the plaintiff, in writing, acknowledged the receipt of said sum of money, and in consideration of the payment of the same to him released the said defendant from all claims and demands for damages, indemnity, or other form of compensation on account of the injuries complained of in his declaration in this action, and waived any and all claims he might have or be supposed to have then or thereafter as growing out of such injuries.  This the said defendant company is ready to verify."

"Defendant's Special Plea No. 4.  For further plea in this behalf the defendant says that the plaintiff ought not to have and maintain this, his action, because, as the defendant avers, on the 6th day of June, 1891, the said plaintiff received the sum of $239.17 on account of the injuries of which he complains in this action, part of which was paid to him from what is known as the 'West Virginia Central Relief Fund,' which is a fund raised for the benefit of the employes of the defendant company injured while in the discharge of their duties as such employes, to which fund the said defendant was a large contributor, and part of which amount was paid in part directly by said defendant; and on the date aforesaid the plaintiff, in writing, acknowledged the receipt of said sum of money, and in consideration of the payment of the same to him released the said defendant from all claims and demands for damages, indemnity, or other form of compensation on account of the injuries com-

plained of in his declaration in this action, and waived any and all claims he might have or be supposed to have then or thereafter as growing out of such injuries; and this the said defendant company is ready to verify."

"Plaintiff's Special Reply No. 1. The plaintiff, for special reply to the special pleas Nos. 1, 2, 3, and 4, filed in this cause by the said defendant, says he ought not to be precluded from maintaining his said action because of the matters in said pleas contained, because he says that on the 6th day of June, 1891, when the said paper writing set forth in said plea was signed by him, the plaintiff, he, the said plaintiff, was an infant under the age of 21 years, and not bound by said writing aforesaid; and the same was repudiated immediately by him, of which repudiation the said defendant had notice. And this he is ready to verify, and wherefore he prays judgment," *etc.*

"Plaintiff's Special Reply No. 2. And the said plaintiff, for further special reply to the special pleas Nos. 1, 2, 3, and 4, filed by the said defendant, says he ought not to be precluded from having and maintaining his said action by reason of the matters set forth in said pleas; because he says the said paper writing, dated June 6, 1891, was procured to be executed by him by the false, fraudulent, and deceitful representations and concealments of said defendant by and through its agent, who procured said writing to be executed, to the effect that said writing was nothing more than a receipt for dues due to him as a member of said relief association, and would not in any manner affect or impair any claim, right, or demand which he might have or maintain against said defendant railroad company for the several wrongs and grievances set forth in the declaration in this case, which said false, fraudulent, and deceitful representations so made by the said defendant and through its said agent who procured the execution of said writing aforesaid, were at the time believed and relied upon by the plaintiff, and caused him to execute said writing aforesaid; all of which he is ready to verify. Wherefore he prays judgment," *etc.*

On the 10th day of March the defendant, by its genera rejoinders to said two special replications, put itself upon

the country.   Issue was joined, and the case submitted to
a jury, which resulted in a verdict in favor of the plaintiff
for five thousand dollars and on motion of the defendant
the verdict was set aside, and a new trial awarded.   On the
15th day of January, 1895, Hon. P. J. Crogan, special judge,
presiding, the plaintiff was granted leave to amend his
declaration by striking therefrom these words: "While the
said train was standing on the railroad track of the said de-
fendant, and not in motion," which was accordingly done,
and the case was again submitted to a jury, and on the 16th
of January, 1895, the jury having fully heard the evidence
in chief on the part of the plaintiff, the defendant moved
the court to exclude said evidence, on the ground that the
same was not sufficient to maintain the issue on the part of
the plaintiff, which motion the court overruled, and on the
17th day of January, 1895, after having fully heard the evi-
dence, the defendant, by its attorney, demurred to the evi-
dence, in which demurrer the plaintiff joined, and the court
took time to consider the said demurrer to the evidence.   On
the 18th day of January the jury returned a verdict in favor
of the plaintiff for nine thousand dollars.   On the 19th of
the same month the court overruled the defendant's de-
murrer to the plaintiff's evidence, and thereupon the de-
fendant moved the court to set aside the verdict of the jury
because the damages assessed were excessive, which motion
the court overruled, and entered judgment on said verdict.
To the action of the court in overruling the demurrer to
the evidence the defendant excepted, and took a bill of ex-
ceptions setting forth the evidence.

As to the demurrer to the declaration, while the language
describing the officer or employe who put the train in
motion at the time the defendant was stooping to withdraw
the coupling pin is somewhat indefinite and general, we
think the charge of negligence on the part of the defendant
is sufficiently alleged, and the demurrer to the declaration
was properly overruled.

The special pleas filed by the defendant rely upon the al-
leged fact that the plaintiff received from the West Vir-
ginia Central Relief Fund a certain sum of money, seventy
five dollars of which amount was paid by the defendant,

and that he acknowledged the receipt thereof, and released the plaintiff from all demands for damage on account of his injuries complained of in this suit; that he received two hundred and thirty nine dollars and seventeen cents on the 6th day of June, 1891, from the defendant, on account of the injuries of which he complains, and that he, in writing, acknowledged the receipt of said sum, and in consideration thereof released the defendant from all claims for damages. Plea No. 3 alleges that said sum was paid defendant by the West Virginia Central Relief Fund, which sum was paid for the defendant to the plaintiff, and in consideration thereof he released the defendant of all claims and demands for damages, *etc.* Plea No. 4 alleges that said amount of money was paid partly by said relief fund and part directly by the defendant, and in consideration thereof he released all claims for damages, *etc.*, on account of the injuries complained of.

The plaintiff in his special reply No. 1 to said special pleas Nos. 1, 2, 3, and 4, says he ought not to be precluded from maintaining his action, because, when the writing set forth in said plea was signed by him, he was an infant under the age of twenty one years, and not bound by said writing, and that he immediately repudiated it. In special reply No. 2 to said pleas he avers that he was procured to execute said paper by false and fraudulent representations made to him by the defendant through its agent.

As to the acts of infants, the law regards them as voidable. The reply avers that he immediately repudiated it. At all events, he must be regarded as having repudiated it when he instituted this suit. As to the time of avoidance by infants of their contracts we find the law stated in 10 Am. & Eng. Enc. Law, 643, under the title "Infants," as follows: "When an infant has conveyed real estate, he can not affirm or avoid his conveyance on the grounds of infancy until he has arrived at the age of majority; but in other transactions, especially where personal property or executory contracts are involved, the infant may avoid at any time." And in the case of *Craig* v. *Van Bebber*, 100 Mo. 584 (13 S. W. 906, 18 Am. St. Rep. 569) we find that court stated the law thus: "The rule that requires an infant who,

upon coming of age, repudiates a contract executed by him during his minority, and which has been in whole or in part executed by the adult party thereto, to return the property or consideration received, applies only where the infant has the property or consideration at the time he attains full age. If he has wasted or squandered it during infancy, he can repudiate the contract without making a tender thereof." In the notes to this case on page 688 it is said: "It is difficult to see upon what theory of pleading or practice the infant could be required in such an action against him on the contract to restore the consideration, if he wishes to take advantage of his infancy, unless a restoration of the consideration be a condition precedent to a disaffirmance, which is very seldom maintained." "The obligation of an infant to restore the consideration received by him under a contract which he claims to disaffirm, where he is a party plaintiff in an action founded on the disaffirmance, has been the subject of a good deal of difference of opinion, and there can hardly be said to be any well defined rule. It has sometimes been held that a restoration of the consideration, or an offer to restore it, was a condition precedent to a disaffirmance by an infant of his contract, so there could be no effectual avoidance of it unless this condition had been complied with,"—citing *Kilgore* v. *Jordan*, 17 Tex. 341; *Stuart* v. *Baker, Id.* 417; *Bingham* v. *Barley*, 55 Tex. 281. It is, however, further said: "It is safe to affirm the authorities generally do not require the performance of any such condition to a disaffirmance, and, although some of them may say that under certain circumstances an infant can not disaffirm his contract and maintain an action to recover back the property or money parted with unless he ventures or offers to restore the consideration, yet we take it that all that is meant is that a restoration or an offer to restore is simply a condition to the obtaining of the relief sought, and not the disaffirmance itself." In the case we are considering there is nothing to show that any portion of the money received remained in the hands of the minor, and under the circumstances he might disaffirm the release without restoring the money received.

This brings us to the consideration of the defendant's motion to exclude the plaintiff's evidence. The defendant, however, after making its motion, to exclude the plaintiff's evidence, proceeded to introduce its own evidence, and by so doing the defendant waived the question raised by its motion to exclude the evidence. In the case recently decided by this Court of *Milling Co.* v. *Watkins*, 41 W· Va. 787 (24 S. E. 612) HOLT, PRESIDENT, in delivering the opinion of the Court, says: "Each party, at certain stages of the trial, moved the court to exclude the evidence from the jury, but, when this motion was overruled by the court, destroyed its effect as a demurrer to the evidence by introducing further evidence, so that defendant's exception to that ruling, having been thus waived, can not be considered." And so we must hold in this case that the defendant, after moving to exclude the plaintiff's evidence, having gone on and adduced its own evidence to the jury, thereby waived its exception to the ruling of the court on said motion.

Coming next to the consideration of the demurrer to the evidence, our latest ruling as to the effect of such demurrer is found in the case of *Mapel* v. *John*, 42 W. Va. 30 (24 S. E. 608) recently decided by this Court. In that case (point 4 of the syllabus) it is held that: "By demurring to evidence the demurrant is now, under section 9 of chapter 131 (Code) not held to waive any part of his competent evidence; but where it conflicts with that of the other party it will be regarded as overborne, unless it manifestly appears to be clearly and decidedly preponderant. He admits the credit of the evidence demurred to, and all inferences of fact that may be fairly deducible from the evidence, but only such facts as are fairly deducible; and refers it to the court to deduce such fair inferences."

The question raised by the demurrer to the evidence and submitted for our consideration is whether the negligence averred and relied upon by the plaintiff in his declaration as entitling him to recover damages from the defendant on account of its negligence is sustained by the proofs in the cause. The plaintiff was the middle brakeman upon the freight train that caused the injury complained of. When

we look to the declaration to ascertain upon what grounds he bases his claim for damages, we find that he alleges that the conductor of the said train, who had, under the rules and regulations made by said defendant, full charge and control of said train of cars and the running thereof, whose orders and commands it was his duty to obey, ordered and required him, while the said train was standing on the railroad of the said defendant, and was not in motion, to go to a certain part of said train and uncouple certain ones of the said cars from the train aforesaid, and in obedience to said order of said conductor, and without any fault or negligence on his part, he did go to said part of said train for the purpose of obeying said command of the conductor, and did attempt to uncouple the said cars from said train, as it was his duty to do under the command of said conductor, and while so engaged in uncoupling or attempting to so uncouple said cars under said order without any negligence or want of care on his part, the defendant, by and through its employes and superior officers in charge of said train, and without any warning of any kind to the plaintiff so engaged, without negligence or fault of any kind on his part in the discharge of his duty under the said command and order of his said superior officer, did with gross carelessness and negligence, and without any warning to plaintiff, and while the plaintiff was between the said cars for the purpose of uncoupling the same, cause the said locomotive train and cars to be put in sudden, rapid and violent motion, whereby the plaintiff, without any fault or negligence on his part, and without his being able to avoid the same, was violently struck by the said cars, knocked down, and run over by the same, and was in consequence greatly wounded, and rendered unfit for manual labor, *etc.* Are these allegations sustained by the proofs? In seeking the facts immediately connected with the accident which resulted in the injury complained of, there is no one who is better acquainted with them than the plaintiff himself, and he says: "The conductor ordered me to uncouple a car next to the engine, and ride it back on the side track, and I told him 'All right.' And there were no one at the switch. I waved them ahead, and run on down to the

switch, and opened the switch, and waved them back, and as they came back I put one hand on one bumper and the other on the other bumper. No handles on that side to get on; and just as I got up, the car parted, and jerked me down, and the engine run over me." He further says he walked down the track a short distance, " * * * and when the train came back to me it wasn't moving very fast; just in an ordinary gait; and I throwed one hand on one bumper and the other one on the other bumper, and drew myself up; straddled the bumpers." Had a lantern in his hand, and when asked what position he was in when the cars separated replied, "One foot on one bumper and the other one on the other bumper, just in the act of reaching for the pin." When we turn to the testimony of George Manear, who was the rear brakeman on the train, we find he was asked to "tell the jury who uncoupled and took out the coupling pin between the car and the engine at the time and just before Mr. Young was hurt," and replied, "I took out the pin;" and when asked by whose directions, if any one's, he did that, answered; "Well, I knew that the car was to be put in. The conductor had told me." He was the asked, "Told you what?" and answered, "Told me that the car was to go in the siding." It appears, then, that the train was in motion in obedience to the signal of the plaintiff himself when he swung himself on the bumpers, and, standing with one foot on the bumper of each car, his lantern in his left hand, he stooped and reached to withdraw the coupling pin, which had already been withdrawn by his fellow servant, George W. Manear, without informing plaintiff of the fact, and from some cause the cars separated, and allowed him to fall between the wheels, which crushed his arm and broke his leg. What caused the cars to separate does not appear. It may have been by slacking the speed of the engine. It surely was not done as alleged in the declaration, "by causing the said locomotive, train, and cars to be put in sudden, rapid and violent motion, whereby the said plaintiff, without any fault or negligence on his part, and without his being able to avoid the same, was violently struck by the said cars, knocked down, and run over by the same." Neither can we say the injury was caused by

the negligent conduct of the conductor. It was after two o'clock at night. This car was to be left at Thomas, and the conductor ordered the plaintiff "to uncouple a car next to the engine, and ride it back on the side track." This order was one which the conductor in the performance of his duties had a perfect right to give, and it was one of the duties of the plaintiff to carry it into execution. The duties of a brakeman are well known to be attended with as much, or perhaps more hazard than any position on the train, and when the plaintiff took the place as brakeman on this railroad he assumed the attendant risks; and it appears from the plaintiff's own testimony that, although he had his lantern in his hand, he did not know whether the coupling pin was there or not when he stooped and reached for it. Several experienced railroad men, who had been engaged as brakemen and conductors from twenty three to twenty five years, when made acquainted with the conduct of plaintiff on this occasion, pronounce it careless and negligent; that he ought not to have attempted to pull the pin without holding to something with the other hand, and that the proper way would have been to back the car into the side track, and uncouple it after the engine stopped.

While we can not consider George W. Manear as free from blame in pulling the pin without informing plaintiff of the fact, we can not hold the defendant responsible for the negligence of said Manear. The negligence complained of by plaintiff in his declaration is claimed to have occurred after the plaintiff stood on the bumpers between the cars, but no such negligence is shown. If the action of Manear was negligent, it occurred before that time, and so far as the evidence shows, said Manear acted upon his own responsibility. See *Hawker* v. *Railroad Co.*, 15 W. Va. 629. In the case of *Railroad Co.* v. *Ross*, 112 U. S. 390, (5 Supt. Ct. 184), Mr. Justice Field, in delivering the opinion of the court, says: "We know from the manner in which railways are operated that, subject to the general rules and orders of the directors of the company, the conductor has entire control and management of the train to which he is assigned. * * * In no proper sense of the term is he a fellow servant with the fireman, the brakeman, the porters,

and the engineer. The latter are fellow servants in the running of the train under his direction." Patterson, in his work on Railway Accident Law (page 350, 320) says: "Railway servants also impliedly assume the risk of injury from negligence on the part of their fellow servants. This rule was not enunciated in *Priestley* v. *Fowler*, 3 Mees. & W. 1, but it is the necessary result of the decision in that case which rests the liability of the master upon his personal negligence, for a master can not be said to be personally negligent if an injury is caused to a servant by the negligence of a fellow servant, in whose original selection and subsequent retention in his post the master has exercised due care." G. W. Manear and the plaintiff were both brakemen occupying the same grade of employment. Manear did not act in a superior capacity to the plaintiff, and they must be regarded as fellow servants. See *Madden* v. *Railway Co.* 28 W. Va. 681. See also *Daniel's Adm'r* v. *Railway Co.*, 36 W. Va. 411 (15 S. E. 162) where HOLT, JUDGE, delivering the opinion of the Court, says: "He who engages in the employment of another for the performance of specified duties and services for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such services, including the perils arising from the carelessness and negligence of those who are in the same employment as fellow servants." See McKinney, Fellow Serv. p. 18, § 9; also page 267, § 124, where the law on this question is thus stated: "If one brakeman is injured through the negligence of another brakeman in the performance of his ordinary avocations, the current of authority is unbroken to the effect that they are fellow servants, and the company is not liable." See *Beuhrings' Adm'r* v. *Railway Co.*, 37 W. Va. 502 (16 S. E. 435). There is nothing in the record which imputes negligence to the conductor. The plaintiff, by his careless conduct, plainly contributed to his own injury.

For these reasons the demurrer to the evidence should have been sustained, and judgment thereon given for the defendant, and the circuit court erred in not so holding. The judgment complained of is reversed, and judgment is rendered for the defendant on the demurrer to the evidence, with costs, *etc.*