## CHARLESTON.

SELDOMRIDGE v. CHESAPEAKE AND OHIO RAILWAY CO.

Submitted January 25, 1899—Decided April 22, 1899.

1. RECORD—*Demurrer to Evidence.*
    If a record entry shows that the defendant demurred in writing to the plaintiff's evidence, and that the plaintiff joined therein, it is a sufficient entry to make the written demurrer a part of the record. (p. 572).

2. MASTER AND SERVANT—*Injury to Employe—Liability of Employer—Appliances.*
    An employer is not bound to furnish the most approved and safest appliances, nor provide the best method and means of work for employees; and if the same are in use by him, and can be with reasonable care used with safety, it is all that can be required of the employer.    (p. 573).

3. MASTER AND SERVANT—*Assumption of Risk.*
    An employe accepts service subject to risks incidental to it, and, when the appliances or means or methods of work are known to the employe, he can make no claim upon the employer to change them.    He accepts them as they are, and, if injured therefrom, he cannot recover damages.    (p. 573).

4. MASTER AND SERVANT—*Contributory Negligence.*
    When an employe willfully encounters danger known to him, or patent and open to be seen and known, he cannot recover damages from his employer for injury therefrom.    (p. 574).

5. MASTER AND SERVANT—*Degree of Care.*
    When an employe assents to occupy the place prepared for him, and to incur the dangers to which he will be exposed thereby,

having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might, with reasonable care and expense, have been more safe. His assent has dispensed with that part of the master's duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper grounds of complaint, even if reasonable precautions have not been taken. (p. 574.)

6. MASTER AND SERVANT—*Accident—Prudence.*

An employe cannot recover from his employer for injuries received by reason of an accident which could have been averted by the employe's proper and prudent discharge of his duties; nor can his personal representative, in such case, if death ensue, maintain an action for damages by reason thereof.   (p. 576.)

Error to Circuit Court, Summers County.

Action by C. A. Seldomridge against the Chesapeake and Ohio Railway Company. Judgment for plaintiff. Defendant brings error.

*Reversed.*

SIMMS & ENSLOW, for plaintiff in error.

MILLER & READ, for defendant in error.

BRANNON, PRESIDENT:

Walter Seldomridge, twenty-seven years of age, had been for four years, up to the 18th of October, 1895, a fireman on the Chesapeake & Ohio Railroad, and before that a section boss. He knew all about engines and railroad service, and, in fact, was a competent engineer. He had been recently crippled in the shoulder from a fall from his engine, and the company placed him to watch at night an engine, the only one operating on the few miles of the Gauley Branch, connecting with the Chesapeake & Ohio Railroad at Gauley Junction; and also to watch freight cars standing at that junction, because of some depredations which had been committed upon said cars. This engine lay overnight at Gauley Junction on said branch road. Twenty-two freight cars were pushed or placed on said branch railroad between three and four o'clock of the 18th of October. On that day Seldomridge landed at Gauley Junction to perform the service specified. He went with this engine from the Junction to Gauley Bridge, one and one-half miles distant. About six o'clock the engine was put in charge of Seldomridge by Sampson, its engineer, and Sel-

domridge then took it to Gauley Junction, and stopped it on the main line of the branch railroad, at a point one hundred and twenty feet from the standing cars. In the evening, after dark, Seldomridge was visited at the engine by an old friend, with whom he had there a considerable conversation. During this conversation an engine with some freight cars arrived on the main line of the Chesapeake ,& Ohio Railroad, which was close at hand, and this friend remarked to Seldomridge that the engine had come to pick up those standing cars. His friend left, and Seldomridge went under the engine to clean out the ash pan, and while he was there the other engine came on the Gauley Branch, and ran up against the freight cars for the purpose of coupling them with the cars already attached to it; but they failed to couple, for some reason not known, and the twenty-two standing cars started down the Gauley Branch, there being at this point a considerable down grade, and ran Seldomridge's engine over him while he was under the engine cleaning out the ash pan, cutting off both legs, from which injury he died. Seldomridge saw the cars standing on the track before dark. He had a lighted torch at night, and must have seen them while talking to his friend, and while going around the engine, they being only one hundred and twenty feet off. How could he help seeing them? And he surely knew that the train had actually arrived, and was coming on the Gauley Branch to take out those standing cars. Shortly after the accident he told Richmond that he had heard that train coming, and heard it stop, and knew that it was coming to get out the cars, but he thought he had plenty of time to get the ashes out, and that he was almost done, and that he thought he had time to finish.

First, the point is made that we cannot consider the case, because the record does not show that the demurrer to evidence was filed, so as to make it part of the record. I should have said that the defendant demurred to the evidence, on which demurrer the court gave judgment for C. A. Seldomridge, administrator of Walter Seldomridge, for five thousand dollars, as fixed by the jury in its conditional verdict, and that the company had brought the case here. Does the record attest the demurrer to evidence? The record says that, "after all the evidence had been introduced before the jury, the defendant demurred to the plaintiff's

evidence in writing, in which demurrer the plaintiff joined."
Then we find a formal demurrer to evidence in writing and
the evidence. How can we say there is no demurrer, under
such circumstances? It would be exceedingly technical,—indeed, erroneous,—as the entry is in due form, and certainly
sufficient. Hogg's Pleading and Forms makes the order
read: "After hearing the plaintiff's evidence, the defendant demurred thereto, which demurrer was reduced to writing, and in which the plaintiff joined." Robinson's Forms
reads (on page 121): ' "The defendant filed a demurrer to
the evidence of the plaintiff, and the plaintiff filed (or entered) his joinder in the said demurrer." He gives no further form to identify the demurrer.

Is the railroad company liable for this lamentable accident? I do not see that the question of fellow servantry,
though discussed in the case, arises, because no neglect is
imputed to the train crew in backing the pick-up train. If,
however, that question were material, it would be against
the plaintiff, because those train hands were fellow servants with Seldomridge. *Jackson* v. *Railroad Co.*, 43 W.
Va. 380, (27 S. E. 278,) and (31 S. E. 258;) *Railroad Co.* v.
*Houchins' Adm'r* (Va.) (28 S. E. 578.)

The turning point of the case lies in the question, is
the railroad company liable for not having an ash pit, to
be used in cleaning out the ash pan? Every man has a
right to conduct his business in his own way. The Gauley
Branch was only fourteen miles in length, and this one engine would make a trip from Gauley Junction to the other
terminus and back each day. There was but one engine
used, and it would hardly be expected that this little road
would be furnished an ash pit for that one engine. "An
employe cannot control the employer's business, nor prescribe the methods of conducting it. The employer is not
liable to the employe for personal injuries received by him,
although the employer might have employed a safer method
of conducting business. The employee assumes the risk ordinarily incidenutal to his employer's business. * * * An
illustration of the rule is supplied by a case to which it was
held that the company was not liable to a switchman who
was injured because it failed to light the yard in which it
required him to perform his duties." 3 Elliott, R. R. section
1289. "Furthermore, the servant takes the risk of the mas-

ter's mode of conducting his business, though a safer one might be followed, if the servant fully knows the risk and continues to work." 14 Am. & Eng. Enc. Law, 845. "It is well settled, however, that the master may conduct his business in his own way, though another method might be less hazardous, and the servant takes the risk of the more hazardous method, as well, if he knows the danger attending the business in the manner in which it is carried on. Hence, a servant knowing the hazards of his employment as the business is conducted, if injured, cannot maintain an action against his employer, merely because he may be able to show that there was a safer mode in which the business might have been conducted, and, if it had been conducted in that mode, he would not have been injured." 1 Bailey, Pers. Inj. section 505. "The master is not bound to furnish for his workmen the safest and best machinery, nor to provide the best methods for the work, in order to save himself from responsibility for injuries to his servants. If the machinery and appliances which he has be in common use, and are such as can with reasonable care be used without danger to the employe, it is all that can be required of the employer." *Berns* v. *Coal Co.*, 27 W. Va. 285. The same case says that the master need not resort to the most expensive methods, and he is not held to extraordinary care. So I do not see that the omission to provide an ash pit would alone render the company liable. When we say that the master is bound to provide a safe place in which to work, and safe appliances and machinery, we mean that they are to be safe against unforseen accidents, and we do not mean that, if these are not the best, and the servant knows just how they are, the master is liable.

But grant, for argument, that the company was remiss in not providing an ash pit; Seldomridge accepted the post, and went to work, knowing there was no ash pit. If dangerous to work without it, his long railroad experience told him of that danger, and he assumed the risk. "When a servant enters into the employment of a master, he assumes all the ordinary risks which are incident to the employment, whether the employment be dangerous or otherwise. If a servant wilfully encounters dangers, which are known to him or are notorious, the master is not responsible for an injury occasioned thereby." *Berns* v. *Coal Co.*, *supra*. Often

have these doctrines been held by this Court. *Humphreys* v. *Newport News & M. T. Co.* 33 W. Va. 135, (10 S. E. 39); *Davis' Adm'r* v. *Coke Co.*, 34 W. Va. 500, (12 S. E. 539); *Stewart* v. *Railroad Co.*, 40 W. Va. 188, (20 S. E. 922); *Massie* v. *Coal Co.*, 41 W. Va. 620, (24 S. E. 644); *Reese* v. *Railroad Co.*, 42 W. Va. 333, (26 S. E. 204); *Young* v. *Railway Co.*, 42 W. Va. 112, (24 S. E. 615); *Oliver* v. *Railroad Co.*, 42 W. Va. 703, (26 S. E. 444); *Skidmore* v. *Railroad Co.*, 41 W. Va. 293, (23 S. E. 713.) "An employer does not impliedly guarantee the absolute safety of his employe. In accepting employment the latter is assumed to have notice of all patent risks of which he is informed, or of which it is his duty to inform himself, and he is further assumed to undertake to run such risks." *Stewart* v. *Railroad Co.*, 40 W. Va. 188, (20 S. E. 922) (Syl. point 6;) *Reese* v. *Railroad Co.* 42 W Va. 333, (26 S. E. 204); *Oliver* v. *Railroad Co.*, 42 W. Va. 704, (26 S. E. 444.) "Where a servant assents to occupy the place prepared for him, and to incur the dangers to which he will be exposed thereby, having sufficient knowledge and intelligence to enable him to comprehend them, it is not a question whether such place might, with reasonable care and by reasonable expense, have been more safe. His assent has dispensed with that part of the master's duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have not been taken." 1 Bailey, Pers. Inj. section 504. When one enters upon a service, he assumes to understand it, and takes all the ordinary risks incident to the employment; and where the employment presents special features of danger, such as are plain and obvious, he also assume the risk of those. *Skidmore* v. *Railroad Co.*, 41 W. Va. 293, (23 S. E. 713.) These principles of assumption of risk by the servant of patent, notorious, and known dangers, or sources of danger, are sustained by the highest court in the land in *Tuttle* v. *Railway Co.*, 122 U. S. 189, 195, 7 Sup. Ct. 1166, and by authorities everywhere. See 1 Bailey, Pers. Inj. sections 677, 796; 3 Elliott, R. R. section 1288. "Where an employe, after having opportunity of becoming acquainted with the risks of his situation, accepted them, he cannot complain. if subsequently injured by such exposure." 14 Am. & Eng.

Enc. Law, 842. On these principles it is apparent that the absence of an ash pit will not make the company liable—First, because the company was not bound to furnish it; second, because Seldomridge knew it was not there, accepted service, and went to work without it, and thereby waived it, and assumed the risks of work without it.

There is another ground forbidding recovery. Seldomridge saw those standing cars. He saw the pick-up train arrive, and was informed and knew that it would back in to take these cars. The train, having arrived, would reasonably occupy but a few minutes in getting off the main track and moving to the Gauley Branch. He could see it. He could hear it. He did see it, and hear it; yet he went under that engine with imminent danger staring him in the face. Why did he go under it, then? He had all night before him. He assumed the risk, with eyes open to the danger, because, as he says, he thought he could finish before the train got in. He knew there was danger, for he said, after the accident, that he thought he could finish before the danger point of time arrived. What prudent man would go under an engine within one hundred and twenty feet of freight cars, with a downgrade between them, knowing that an engine would bump against them in a few minutes? In *Ward's Adm'r* v. *Railway Co.*, 39 W. Va. 46, (19 S. E. 389,) this Court held that "an employe cannot recover from his employer for injuries received by reason of an accident which could have been averted by the employe's proper discharge of the duties of his employment; nor can the personal representative of such employe, in such case, if death ensue, maintain an action for damages." "A servant, having knowledge of danger about him, must use diligence and care in protecting himself from harm." *Stewart* v. *Railroad Co.*, 40 W. Va. 188, (20 S. E. 922.) So, contributory negligence of Seldomridge in going under that engine just at that dangerous time would also forbid recovery. He had danger-signal lamps. He put none upon his engine to let the trainmen know he was there. I should have mentioned the case of *Railroad* v. *Weese*, 32 Fla., 212, (13 South, 436,) where the complaint was that no pit was prepared that plaintiff could stand in while wiping the engine, and no signal lamps were furnished him to warn the other employes, and the court held that where the employer does

not furnish safe implements, and does not pretend to do so, and this fact is fully known to the employe, he waives this duty on the part of the employer, and cannot recover for injuries.

Complaint is made that there was no side track on which to place the engine. Seldomridge knew this. The principles as to the ash-pit apply to the side track. Mention is made of the absence of a signal light at the junction of the Gauley Branch with the Chesapeake & Ohio Road, but I do not see what this has to do with the engine. The plaintiff's own evidence in this case shows that Seldomridge knew of, saw, realized, and intentionally encountered the danger, and, therefore, that alone would sustain the demurrer. *Gerrity's Adm'r* v. *Haley*, 29 W. Va. 98, (11 S. E. 901.) On the whole evidence, the case is to me plain against the plaintiff. Feeling and sympathy for the unfortunate Walter Seldomridge and his mother might decide the case for the plaintiff, but law does not.

Though I should have done so earlier in this opinion, I will quote, as applicable to this case, from the opinion of Judge Green in the case just cited: "This case is, of course, entirely different from those cases where, in any work, dangerous appliances were used, which the employer knew were dangerous, but the servant did not, and from those where defective machinery was furnished by the employer, which he knew was defective, but the servant did not, as in *Cooper* v. *Railroad Co.*, 24 W. Va. 37, and from those where a master had notice of defects and promised to remedy them. A very different case would be presented if the plaintiff's intestate had been engaged in some work the dangers of which, the jury might infer, he was ignorant of, and the employer aware of. The law is thus stated in *Berns* v. *Coal Co.*, 27 W. Va. 296,"—citing that case to show that if the employe "willingly or wilfully encounters dangers, known to himself, or notorious, the master is not liable." For these reasns, we reverse the judgment, and enter judgment for the defendant.

*Reversed.*