# CHARLESTON

FULTON v. THE CROSBY & BECKLEY COMPANY.

Submitted January 26, 1905.     Decided February 7, 1905.

1. RAILROAD—*Master and Servant.*

   A lumber railroad, crudely and unscientifically constructed, the character of which is fully known to a servant who is engaged in operating a locomotive engine upon it, has, in the contemplation of the parties, and, therefore, of the law, certain elements and qualities upon which the servant may rely for his personal safety, and which the master, by the exercise of reasonable care, must maintain. (p. 95.)

2. MASTER AND SERVANT—*Reasonable Care.*

   The measure of the duty of a master to his servant is reasonable care, in view of the situation of the parties, the relations they have established, the nature of the business in which the servant is employed, the character of the machinery and appliances used, the surrounding circumstances and conditions and the exigencies which require vigilance and attention. (p. 95.)

3. NEW TRIAL—*Evidence. Preponderance of.*

   A new trial will not be allowed in a case in which only simple issues of fact were raised, dependent upon conflicting oral evidence, thus making the credibility of witnesses an important factor in the case, merely because the verdict is contrary to an excess in the quantum of such evidence, there being direct and positive evidence tending to sustain it, and no controlling physical, admitted or established, facts with which it is inconsistent. (p. 97.)

SANDERS, JUDGE, (Absent).

Error to Circuit Court, McDowell County.

Action by Fred H. Fulton, by his next friend, against the Crosby & Beckley Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

RUCKER, ANDERSON & HUGHES and WYNDHAM STOKES for plaintiff in error.

T. L. HENRITZE and E. C. MARSHALL, for defendant in error.

POFFENBARGER, JUDGE:

Relying upon the action of the court in overruling a motion to exclude the plaintiff's evidence, and in refusing to set aside the verdict on the ground that it is contrary to the

law and the evidence, as grounds of error, the Crosby and Beckley Company complain of a judgment of the circuit court of McDowell county, in favor of Fred H. Fulton, against it, for the sum of $1,500.00.

The section was for the recovery of damages for personal injuries sustained in consequence of the wreck of a wooden bridge or trestle in a logging railroad, on which, as an employe of the defendant, the plaintiff was running on a locomotive engine as fireman. The bridge was something over twenty feet long and consisted of pens built of logs with log stringers, supporting the ties and rails, resting on the pens. It had been in use for more than three years, in which time no previous accident had occurred.

Evidence was introduced to show defects in the bridge in two respects. First, that the stringers, reaching from pen to pen, and supporting the ties and rails, and to which the ties had been spiked, were defective in this, that the sap of the logs, through which the spikes had been driven, had become so sap-rotten as to release the spikes; and second, that the ties had not been sufficiently nailed to the stringers. That the ties had become detached from the stringers at the time of the wreck of the engine seems to be undisputed. They slipped off of the stringers, threw the engine off the bridge, and then remained fastened together by the rails and swung loose on the stringers.

The witnesses substantially agree in saying that the stringers were sap-rotten and that the rotten wood was from one-half inch to an inch and a half in thickness. They differ, however, on the question whether, when the bridge was originally constructed, the sap on the top of the stringers, at the points at which the ties rested on them, had been hewn off. The plaintiff himself, as a witness, says nothing on the subject. A. L. Denham, the second witness, is silent as to whether the stringers were surfaced for the ties. W. L. Akers, the third witness, says the spikes had pulled out on account of the stringers being rotten. Whether any part of the sap had been taken off he does not say. The next witness for the plaintiff, Andrew Javens, said the sap was taken off. Plaintiff's next witness, Melvin Camper, thought the stringers had not been surfaced, but was not positive as to

that. All of these witnesses, except the plaintiff, had inspected the ties and stringers.

The defendant introduced, first, Lee McChesney, its general manager, who said the stringers had been surfaced off and, in so doing, "the bigger part of the sap had been taken off," but that the amount of sap left on the stringers was not enough to render them defective. R. K. Lowery, who was next introduced, testified that the stringers had been cut down to the depth of an inch or an inch and a half to the solid wood. The evidence for the defendant further shows that the same stringers were put back into the bridge, when it was repaired, with the exception of one, which had either been broken or was too short, and that no additional surfacing had been done on them. And as to this there is no contradiction in the evidence except that some of the witnesses for the plaintiff say they think two new stringers were put in instead of one.

As to the nailing of the ties, Denham said they had not been properly nailed, as he had seen some which bore no evidence of having been nailed, but could not say whether they had been in the bridge or had been brought to the scene of the wreck for the construction of a temporary track for use in putting the engine back on the track. Witness Akers said he had gone on the grounds before any repair work had been done and had seen but few spikes and that not more than one-fourth of the ties had been nailed. Mr. Javens, witness for plaintiff, said all the ties had been well nailed down at each end, with one spike through the center and one on each side "toe-nailed." Camper was positive that only part of the ties had been spiked down, and that it was customary to put only one spike in each end.

The three witnesses for the defendant, McChesney, Lowery and Fitsgerald, all testified that all the ties had been well nailed down and constantly inspected and re-nailed from time to time. Fitsgerald said that, on either Saturday or Monday preceding the Tuesday on which the bridge broke he had gone over it and nailed all the ties down, because he thought some of the spikes might have broken in two.

Any error there may have been in overruling the motion to exclude the evidence for the plaintiff was waived by the

introduction of evidence for the defense.   *Core* v. *Railroad Co.*, 38 W. Va. 456; *Trump* v. *Coal Co.*, 46 W. Va. 238.

The case is clearly ruled by the principles governing the relation of master and servant, not by those applicable to common carriers.   The plaintiff was an employe and in the line of duty at the time of the injury.   As such he must be held to have assumed all the ordinary risks which were incident to the dangerous employment in which he was engaged, *Reese* v. *Ry. Co.*, 42 W. Va. 333; *Oliver* v. *R. C. Co.*, *Id.* 703; *Seldomridge* v. *Railway Co.*, 46 W. Va. 569; *Berns* v. *Coal Co.*, 27 W. Va. 285; *Humphreys* v. *Newport &c. Co.*, 33 W. Va. 135.   If the negligence of the master was known to him, he is deemed to have assumed the risk of injury resulting from it also.   *Sanderson* v. *Panther Lumber Co.*, 50 W. Va. 42; *Berns* v. *Coal Co.*, 27 W. Va. 285. An employer does not guarantee the safety of his employe.   *Stewart* v. *Ry. Co.*, 40 W. Va. 188; *Reese* v. *Ry. Co.*, 42 W. Va. 333; *Oliver* v. *R. R. Co.*, *Id.* 704.

Nevertheless, the master owes certain duties to his servant. He must provide safe and suitable machinery and appliances for the business in which his servant is employed, keep the same in repair and make proper inspections and tests as to their safety and suitableness.   He must exercise reasonable care in providing and retaining sufficient and suitable servants for the business.   He must establish proper rules and regulations for the service and conform to them.   He must also provide for the safety of the place in which the servant is to work.   *Jackson* v. *R. R. Co.*, 43 W. Va. 380; *Madden* v. *R. R. Co.*, 28 W. Va. 617.   These duties are absolute and non-assignable, and, for injury resulting from a breach thereof, the employer must answer, though the fault be that of his vice-principal to whom the performance thereof had been delegated, unless the servant himself, before the injury, had knowledge of the breach of duty on the part of the master, or has, by his own negligence, contributed to the injury. *Jackson* v. *R. R. Co.*, cited.

As the employe assumes the risk of all known dangers, though attributable to failure of legal duty in the abstract on the part of the employer, the question of negligence in any given case, depends upon the relation which the master and servant, by their conduct and agreement, have established

between themselves with reference to the business in which the servant is employed. This waiver on the part of the servant releases the master from much of the burden which the law, but for it, would impose. Of this, the case in hand affords a good illustration. The railroad, though running over a mountain, crossing ravines, winding around the sides of declivities and, in general, located on ground such as, in the case of an ordinary railroad, would require the use of the best materials, most modern and improved appliances and best construction, conforming in all respects to those rules and principles which experience has shown to be essential to safety in operation, is a crude affair, lacking in such materials, appliances and construction. All this was necessarily known to the plaintiff, and he assumed the risk of all danger of injury incident to his employment on that road. But the engine and cars were no doubt light, run at a low rate of speed and not heavily burdened, in view of which, the track and road bed were deemed sufficient and reasonably safe, by both employer and employe, notwithstanding the use of inferior materials and crude construction.

However, the employer, is by no means relieved of all duty to the servant, under such conditions. He is still bound to the exercise of care, for the safety of the servant, and the measure of his duty is reasonable care, in view of the situation of the parties, the nature of the business, character of the machinery and appliances used, all the surrounding circumstances and conditions and the exigencies which require vigilance and attention. *Oliver* v. *Railroad Co.*, 42 W. Va. 703; *Hough* v. *Railway Co.*, 100 U. S. 213; Labatt Mas. & Serv. section 16. Though a lumber railroad, with its wooden rails and other elements of primitive and obsolete construction, is crude and dangerous, as compared with roads scientifically constructed, it has, in the contemplation of the parties concerned, and, therefore of the law, certain characteristics and qualities, upon which the servant may rely and which he is not deemed to have waived, and which the master must have given the structure in its erection and is under a duty to maintain. This duty of maintenance necessarily implies that of supervision, inspection and repairing.

These principles, so far as the record discloses, were applied. As the evidence introduced by the plaintiff was

adduced for the purpose of showing a dangerous condition of
the stringers, due to age and decay, and defective nailing of
the cross-ties, it clearly falls within the limits of the rules
stated. As to these matters, the employer was undoubtedly
bound to the exercise of reasonable care for the safety of the
employes operating the train, and, as to both issues of fact,
there is conflict in the evidence. Some witnesses say the
ties were all sufficiently nailed to the stringers, and others
that they were not. All agree that the stringers were sap-
rotten to such an extent as to weaken the connection between
the ties and stringers, provided the sap had not been hewn
off under the ties. As to whether it had been hewn off, how-
ever, they are not agreed. On each of the two issues of fact,
a determination of either of which, adverse to the defend-
ant, would sustain the verdict, there is evidence tending to
support the contentions of both parties. In dealing with
this evidence, the jury, judged by the verdict, have not
ignored any legal principles, governing the evidence, unless
it be the rule of preponderance, which will be noticed later
on, nor any admitted, or clearly established, material facts,
inconsistent with the verdict, or the finding, as to facts, di-
rectly dependent upon the conflicting evidence.

The rule on this subject is most clearly and accurately
stated in 3 Cyc. 352, as follows: "A verdict will not be set
aside unless overwhelmingly against the weight of the evi-
dence or so palpably unsupported by sufficient evidence as to
clearly indicate that it is wrong, though, in such contingency
as where all the reasonable probabilities and overwhelming
weight of the evidence are against a verdict, or the testimony
on one side is consistent and in harmony with known facts,
and that on the other is inconsistent with itself and with such
known facts, or where the verdict is against admissions, or
where the preponderance is such as to indicate a mistake, or
that the verdict was rendered under a misapprehension of
the legal effect of the evidence, or material facts are mis-
takenly disregarded—the verdict will be set aside. And
where the verdict is manifestly against the evidence, the
judgment will be reversed, notwithstanding the trial court
had refused to set aside the verdict. But, on the other hand,
the verdict must be so clearly wrong and so manifestly against
the weight of the evidence as to amount to a verdict upon

failure of proof, or to raise a necessary inference that it was the result of passion or prejudice, and not of an intelligent or honest exercise by the jury of its proper and lawful functions. In such emergency, however, the verdict will be set aside.''

*Johnson* v. *Burns*, 39 W. Va. 658, and *Davidson* v. *P. C. C. & St. Louis Ry. Co.*, 41 W. Va. 407, do not go beyond the limits of this rule. In the former, the evidence showed certain physical facts and well known customs and usages, which the parties clearly understood, in view of which the contract was made, and which were actually and necessarily comprehended in the manifest objects and purposes of the parties to the contract, so that failure of the jury to recognize them and harmonize the other evidence with them, had resulted in a verdict, palpably wrong and against the overwhelming weight of the evidence, viewed as a whole. The other case is of much the same character, admitted circumstances, and incontrovertible physical facts, governing and controlling the weight and force of all the other evidence and facts, and irresistibly leading to a conclusion different from that embodied in the verdict, having been ignored by the jury. Hence, those cases are clearly within the general proposition above quoted. They do not apply here because the conditions calling for their application are not found in this case.

The evidence for the defendant may, and probably does, preponderate in the sense, that the evidence for the plaintiff is not entirely consistent, one witness having testified that all the cross-ties had been properly nailed down and all the sap removed from such parts of all the stringers as were directly under the cross-ties, so that the sap-rottenness could not have caused the injury; while the testimony of all the witnesses for the defendant agrees that the ties had been nailed and the sap so removed from the stringers. But the credibility of the witnesses is a large factor to be dealt with in determining these questions, and, as practically all of them were employes of the defendant, at the time of the trial, this circumstance was an element bearing on the question of credibility. ''Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely be-

cause the court is of opinion that the preponderance of evidence required a different verdict." *Black* v. *Thomas*, 21 W. Va. 709, 713; *Sheff* v. *City of Huntington*, 16 W. Va. 307; *Graysons Case*, 6 Grat. 712. This is the rule for the guidance of the trial court. In the appellate court, the verdict must be viewed as having been strengthened by the approval of the judge who tried the case, heard the evidence detailed and observed the personal appearances and demeanor of the witnesses. *Black* v. *Thomas*, cited; *Burgh* v. *Shanks*. 5 Leigh 598.

In view of these rules, the extent to which the credibility of the witnesses enters into the verdict, and the simplicity of the issues presented, it is clear that mere excess in the quantum of the evidence adduced by the defendant, does not justify the granting of a new trial by this Court.

No error in the judgment being perceived, it will be affirmed.

*Affirmed.*