## CHARLESTON.

OLIVER *v.* OHIO RIVER R. CO.

Submitted June 17, 1896—Decided December 9, 1896.

| 42 | 703 |
|----|-----|
| 46 | 574 |
| 42 | 703 |
| 57 | 94 |
| 57 | 95 |
| 42 | 703 |
| 59 | 691 |

1. MASTER AND SERVANT—MASTER'S DUTY—REASONABLE CARE.

    The measure of a master's duty to his servant is reasonable care having relation to the parties, the business in which they are engaged, and the exigencies which require vigilance and attention. He is not a guarantor of the safety of his servant.

2. MASTER AND SERVANT—CARE IN CHOOSING SERVANTS—CO-SERVANTS' RISK.

    The master's duty is to make and promulgate proper rules. It is not required that the master should see to it, personally, that notice comes to the knowledge of all those to be governed thereby. If there is due care and diligence in choosing competent servants to receive and transmit the necessary orders, the negligence by them in performing it is a risk of the employment that the co-employe takes when he enters the service.

3. INSTRUCTIONS—HYPOTHETICAL FACTS.

    It is error to instruct a jury hypothetically upon a state of facts when there is no evidence tending to prove such facts.

4. RAILROAD COMPANIES—SERVANT'S KNOWLEDGE OF RISK—ASSUMPTION OF RISK.

    Where an employe of a railroad company has knowledge of any danger connected with his employment which may be avoided by the use of ordinary care, and appreciates the danger to which he exposes himself, if he continues in such employment after such knowledge, without protest or complaint on his part, or promise on the part of such railroad company that such danger shall be removed, he will be *held* to have assumed the risk

of such danger, and to have waived all claims for damages in case of injury.

5.  MASTER AND SERVANT—ASSUMPTION OF RISK—OBVIOUS DANGER.

    When a servant enters into the employment of a master, he assumes all of the ordinary risks incident to his employment, whether the employment is dangerous or otherwise; and if a servant willfully encounters dangers which are known to him, or are notorious, the master is not responsible for any injury occasioned thereby.

V. B. ARCHER and H. P. CAMDEN for plaintiff in error.

H. P. CAMDEN, cited Shear. & R. Neg. § 203; 3 Wood, Rys. § 382; 27 W. Va. 32, 75, 296-300, 305, 617; 38 W. Va. 23; 37 W. Va. 502; 136 N. Y. 77; 33 W. Va. 135; 31 W. Va. 116, 142, 152, 662; 36 W. Va. 73; 41 W. Va. 293; 43 Iowa, 396; 47 Fed. Rep. 687; 41 W. Va. 620; 24 W. Va. 606-13; 48 Mich. 622; 25 Am. & Eng. R. R. Cas. 519; 32 W. Va. 119; Black. Proof & Pl. Ac. Cases, 201; Bailey, Master's Liability, Serv. 77-85; 153 Mass. 334, 485; 93 Mich. 646; Patterson Ry. Ac. Law, 338; 76 N. Y. 125; 113 N. Y. 540; 49 Mich. 466; 15 W. Va. 628.

GEORGE LOOMIS for defendant in error, cited 3 Wood, Ry. Law, c. 23; 38 W. Va. 206; 28 W. Va. 610; 40 W. Va. 246, 675, 676, 692, 693, syl. pts. 2, 3, 4; 39 W. Va. 87; 36 W. Va. 318.

ENGLISH, JUDGE:

This was an action of trespass on the case, brought by Clifton Oliver, a minor under the age of twenty one years, who sued by A. H. Oliver, his next friend, against the Ohio River Railroad Company, to recover damages for an injury received while engaged in coupling cars as an employe of said railroad.

At the time of the injury he was between twenty and twenty one years of age. The defendant demurred to the declaration, which demurrer was sustained, and the plaintiff filed an amended declaration, which is in the words and figures following.

"State of West Virginia, Wood county. In the Circuit,

Court thereof. Clifton Oliver, a minor under the age of twenty one years, to wit, about twenty years of age, who sues by A. H. Oliver, his next friend, complains of the Ohio River Railroad Company, a company incorporated by the laws of the state of West Virginia, which has been summoned to answer the plaintiff upon this, an amended declaration on a plea of trespass on the case, for this, to wit: The defendant heretofore, to wit, on the —— day of July, 1890, and before and ever since that time, was and is the owner, proprietor, manager and operator of a certain line of Railway extending along near the east bank of the Ohio river, in the county of Wood aforesaid and during the time aforesaid maintained divers side tracks of railway and switches connected with the main track, and operated and maintained divers machine shops, repair shops, and yards for the use and accommodation of the main track or line of railway in making up trains, connecting and disconnecting cars, and the like, north of and near to the city of Parkersburg, to wit, in the county aforesaid.

"That on or about the——day of July, 1890, aforesaid at the instance, solicitation and request of the defendant, the plaintiff, Clifton Oliver entered, into the employment of said defendant, at and for the consideration of a price then and there agreed upon by and between them, as a common workhand, to do and perform such work and labor as should be safe, proper and suitable for him, as a laborer, in the premises, for the consideration aforesaid. The plaintiff avers that he was without knowledge of or experience in the work and labor to be done and performed in virtue of said undertaking and agreement with the defendant, which fact was well known to the defendant; that on or about the —— day of July, 1890, the plaintiff went to the defendant's said yard, near Parkersburg, and reported himself to said defendant as being ready to enter upon his said employment with it, and then and there again informed the defendant that he was wholly without experience in and knowledge of the work and service by him to be done and rendered in virtue of his said employment, whereupon the said defendant, by its agents, required the plaintiff to do braking on the night train in said yard, at which employment the plaintiff,

in obedience to said requirement, worked until the Saturday night following, and on the next succeeding Monday until 6 o'clock in the afternoon, when the said defendants, by its agents, wrongfully and negligently required the plaintiff, by virtue of his said employment, to do and perform the work of coupling cars in, upon, and near the defendant's said yard, in the county aforesaid, and on the tracks of the defendant aforesaid. Plaintiff alleges that he had no previous knowledge or experience in the business of coupling cars as he was required as aforesaid to do, and in the manner required by the defendant, which is hazardous and dangerous, especially to a person inexperienced therein which the defendant well knew, and which the plaintiff did not know.

"The plaintiff further avers that in obedience to an order and command of the defendant, under and by virtue of his said employment, he proceeded to couple certain of the cars of the defendant near said yard, and on the tracks aforesaid and succeeded in making two couplings thereof, which, when done, left twelve cars connected to the locomotive, belonging and attached to the train, at which time there were seven stationary cars on the same track, with a space of about sixty feet between the seven stationary cars and the hindermost car of the twelve attached to the locomotive aforesaid. The plaintiff was then and there required by the defendant to go to the foremost of the seven cars aforesaid and adjust the coupling pin, link, and coupling appliances in proper position to effect a coupling of said stationary cars with the twelve cars aforesaid, thus connecting all into one train. The plaintiff thereupon, in obedience to said order, did as directed as aforesaid, and in so doing ascertained that the coupling did not work easily, so as to adjust itself readily to its proper place when the car to be attached thereby should be brought in position, and that he might, in consequence, be detained longer at the coupling than otherwise need be. The plaintiff thereupon took precaution to step away from the coupling, and off from the track, to ascertain where the locomotive was, belonging to the said twelve cars, and ascertained that said locomotive was stationary and at a safe distance away; and the plaintiff then resumed his work at the

place aforesaid, of adjusting said coupling pin, and while he was thus engaged in the line of his duty and employment aforesaid, and according to the orders received as aforesaid, and the defendant well knew the same, the defendant wantonly, willfully, knowingly, negligently, carelessly, and needlessly caused the said locomotive to push and propel the said 12 cars against the said 7 cars while the plaintiff was still standing upon the track aforesaid, and between the said 12 cars and the said 7 cars, at work as aforesaid, as he had been ordered to do by the defendant, and without giving any signal or warning to the plaintiff of the moving and approach of said locomotive and 12 cars, either by ringing a bell or blowing a whistle, or otherwise to notify the plaintiff of its approach, and without having any brakeman or other person on, at, or near the said locomotive and 12 cars to give the necessary warning and signals as in duty it was bound to do, the said defendant wantonly, willfully, knowingly, negligently, carelessly, and needlessly caused the said train of 12 cars to be pushed upon and against the plaintiff by the said locomotive, whereby plaintiff's left arm was caught between the deadwoods or coupling fixtures of the said cars at the place where the plaintiff was for the purpose of effecting the coupling as aforesaid, and bruised, mashed, crushed, and mangled his left arm, causing him to suffer intense bodily pain and mental anguish for a long space of time, to wit, for the space of 36 hours, in consequence of said crushing and mangling of the plaintiff's left arm, and it became and was necessary to have the same amputated above the elbow, and the same was accordingly amputated, to wit, at the county aforesaid.

"The plaintiff avers that the said defendant was bound to keep all its fixtures, machinery, coupling appliances, and utensils in proper order and repair, and to have placed upon its said train of 12 cars, and at and near to the place where said coupling was required to be made as aforesaid, one or more, and a sufficient number of persons, besides its engineer, to aid and assist to give warnings and signals to insure safety to the plaintiff in and about the work of coupling cars as aforesaid at the time and place aforesaid; yet the plaintiff avers the de-

fendant wholly failed so to do, and negligently and care-
lessly allowed the coupling link and coupling fixtures on
said cars, with which the plaintiff was required to work as
aforesaid, to be out of repair, and not in a suitable and safe
condition for said purpose, and negligently failed to have
sufficient assistance then and there of brakemen and others
to give the necessary signals, aids, and warnings requisite
and necessary to enable the plaintiff to perform the work so
required of him with safety, whereby and by means of the
said several premises herein complained the plaintiff hath
been greatly injured, and sustained damages to the value
of ten thousand dollars, to wit, at the county aforesaid, and
thereupon he sues."

It is contended by counsel for the plaintiff in error that
the demurrer should have been sustained to this amended
declaration because every declaration for damages for in-
juries caused by negligence must contain three things:
First, an allegation of duty owed to the plaintiff; second, a
failure in the performance, or the imperfect performance,
of the duty; third, that such failure or breach of duty was
the natural and proximate cause of the injury and damage
to the plaintiff. And it is insisted that, while the declara-
tion sets forth the youth and inexperience of the plaintiff
in the kind and character of work he was engaged in for
the defendant, sufficient to cause the defendant company to
owe the plaintiff the duty of instruction and warning, yet
it nowhere alleges a breach of that duty on the part of the
plaintiff, in failing to give the plaintiff such instruction and
warning, and, if the plaintiff relied on the breach of this
duty to entitle him to recover, the *allegata* should precede
the proof. Black, Proof & Pl. p. 201, is cited in support
of the proposition, where the author says, in section 138:
"In actions to recover damages for injuries caused by neg-
ligence, a good pleading, whether it be a complaint, peti-
tion, declaration, or indictment, should contain three things:
First, an allegation of a duty owing by the defendant to
the plaintiff, or facts and circumstances from which a duty
can be inferred; second, a failure in the performance, or an
imperfect performance of such duty by the defendant; third,
that such failure or breach of duty was the natural and

proximate cause of the injury and damage to the plaintiff."

It is, however, averred in the declaration, after it is stated that the plaintiff informed the defendant that he was wholly without experience in and knowledge of the work and service by him to be done in virtue of his said employment, "that the defendant wrongfully and negligently required the plaintiff, by virtue of his said employment, to do and perform the work of coupling cars in, upon, and near the defendant's yard," etc. Section 139, Black, Proof & Pl., states the law thus: "A general averment of negligence in a complaint, declaration, or· petition is sufficient. The particular acts constituting the negligence need not be, in detail, specifically set out;" citing numerous authorities. In the case of *Poling* v. *Railroad Co.*, 38 W. Va. 645 (18 S. E. 782) this Court held that "a declaration for negligence is good if it contains the substantial elements of a cause of action, the duty violated, the breach thereof, properly averred, with such matters as are necessary to render the cause of action intelligible, so that judgment according to law and the very right of the case can be given." In the case of *Hawker* v. *Railroad Co.*, 15 W. Va. 628, this Court held that, "a declaration against a railroad company for negligently and wrongfully killing the plaintiff's cattle on its track need not state the acts of omission or commission which constituted the negligence and wrong." So, in the case of *Blaine* v. *Railroad Co.*, 9 W. Va. 252, there was a demurrer to the declaration, which contained this averment: "Nevertheless, the said defendant, by its servants and agents, so improperly and negligently used, managed, ran, and operated its said locomotive and cars that by and through the negligence and improper conduct of said defendant, by its servants and agents in that behalf, the locomotive and cars of the said defendant then and there ran upon and over the said horse of the said plaintiff, and thereby, and then and there, broke the leg of the said horse," etc. The objection was made that the allegation was too general, but it was held sufficient. See, also, *Searle* v. *Railway Co.*, 32 W. Va. 370, second point of syllabus, and opinion of Court, 373 (9 S. E. 248).

In the declaration we are considering it is alleged that the

defendant, by its agents, wrongfully and negligently required the plaintiff, by virtue of his said employment, to do and perform the work of coupling cars. I do not regard it as necessary that the declaration should state in what facts or circumstances this negligence consisted. After the demurrer was overruled, the defendant pleaded not guilty. The case was submitted to a jury, and, after the testimony was submitted, instructions were asked by both plaintiff and defendant, and a verdict was rendered for the plaintiff for ten thousand dollars. A motion was made to set it aside, which was overruled. The defendant excepted, and obtained this writ of error. The second, third, and fourth assignments of error pertain to the action of the court in giving instructions Nos. 1, 2, and 3 asked for by the plaintiff, to the jury, which instructions were objected to by the defendant, and exceptions taken to the ruling of the court in giving the same, which instructions are set forth in the record, and read as follows:

"Plaintiff's instruction No. 1: It is the duty of a railroad company to establish such proper rules and regulations for the safety of its employes as will afford them reasonable protection against the dangers incident to the performance of their respective duties, and to conform to its said rules. Such railroad company is liable to its servants for any neglect of its duty, whether committed by the master, or by one to whom he had delegated his authority. Therefore the jury are instructed that if they believe from the evidence that at the time of the injury the plaintiff was employed and engaged as a brakeman in the service of the defendant, and that he was inexperienced in the duties of a brakeman, and that the defendant company knew he was thus inexperienced, and if the jury further believe from the evidence that the defendant company failed to make and conform to such rules and regulations as would protect the plaintiff in the performance of the duties of his employment, or failed to communicate to the plaintiff such rules and regulations, and that he had no notice or knowledge thereof, then such failure of the defendant constitutes such negligence on the part of the defendant company as entitles the plaintiff to recover in this action, if the jury shall further believe from

the evidence that the failure of the defendant to communicate such rules and regulations to the plaintiff was the proximate cause of said injury.

"Plaintiff's instruction No. 2: The jury is instructed that a brakeman who enters the employment of a railroad company takes upon himself the ordinary risks of the employment, and the hazards and dangers properly incident to such service. But nevertheless such railroad company is bound to take all reasonable precautions for the safety of the brakeman. Therefore in this case it was the duty of the defendant company to provide the brakeman Clifton Oliver, if the jury believe from the evidence that he was a brakeman in the employ of said company, with sufficient and safe machinery and appliances to be used in the course of his employment. And if the jury believe from the evidence that, at the time the plaintiff received the injury complained of in the declaration, he was a brakeman in the employ of the defendant company, and that whilst engaged in that employment such injury was received, and that the defendant had not taken all reasonable precautions for the safety of the plaintiff as such brakeman, and said company had not provided him with sufficient and safe machinery and appliances to be used in the course of his said employment, and if the jury further believe from the evidence that the proximate cause of such injury was the failure of the defendant company to provide the plaintiff with such machinery and appliances, then that failure constitutes such negligence on the part of the defendant company as will entitle the plaintiff to recover in this action.

"Plaintiff's instruction No. 3: The jury are instructed that it is the duty of a railroad company to provide safe and suitable machinery, and appliances for its business, which includes the exercise of reasonable care in furnishing such appliances, and the exercise of like care in keeping the same in repair and making proper inspections and tests; that if the jury believe from the evidence that the plaintiff, Clifton Oliver, was at the time of the injury complained of in the employment of the defendant company (the Ohio River Railroad Company) engaged as an inexperienced brakeman, which inexperience was known to the defend-

ant, and that while engaged in the line of his employment the defendant failed and omitted to provide safe and suitable appliances for the business of braking, and failed and omitted to advise plaintiff of the necessity of such appliances, or the rules and regulations of the company requiring the same, and he had no notice thereof, and that by reason of such failure to provide safe and suitable appliances the said Oliver was exposed to greater danger in and about his said employment, and received the injury complained of in the declaration, then the jury are instructed that such failure to furnish suitable appliances as aforesaid constitutes negligence on the part of the defendant such as will entitle the plaintiff to recover in this suit, if the jury shall further believe from the evidence that said failure was the proximate cause of said injury."

The defendant, also, by its counsel, asked the court to give to the jury the following instructions:

"Defendant's instruction No. 5: The jury are further instructed that, if they believe from the evidence that the injury to the plaintiff was caused by his attempting to make a coupling of two freight cars, such act of coupling was not exposing the plaintiff to extraordinary risks or hazards, not naturally incident to the service of the plaintiff as a brakeman.

"Defendant's instruction No. 6: The jury are further instructed that if they believe from the evidence that the plaintiff willfully encountered the dangers of coupling cars, which were known to him or were notorious, that in such case the defendant railroad company is not responsible for any injury occasioned thereby." But the court refused to give said instruction as asked for, but modified the same by adding to said instruction the following language, "Unless you further believe that there was negligence on the part of the defendant which was the proximate cause of such injury," and gave said instruction as modified. To which ruling of the court in refusing to give said instruction as asked for, and in modifying the same and giving said instruction as modified, the defendant excepted before the jury retired to consider of their verdict.

"Defendant's instruction No. 7: The jury are further

instructed that the plaintiff, Clifton Oliver, can not recover for an injury suffered in the course of his employment from a defect in the machinery or appliances used by the defendant company, unless the defendant knew, or ought to have known, of the defects, and the plaintiff was ignorant of such defect, or had not equal means of knowledge." But the court refused to give said instruction as asked for, but modified the same, and gave said instruction, as modified, in words and figures as follows (instruction No. 7 as modified): "The jury are further instructed that the plaintiff, Clifton Oliver, can not recover for an injury suffered in the course of his employment from a defect in the machinery or appliances used by the defendant company, unless the defendant knew, or ought by reasonable diligence to have known, of the defects, and the plaintiff was ignorant of such defect, or had not the means of knowledge thereof within his reach by reasonable diligence." To which ruling of the court in refusing to give said instruction as asked for, and in modifying and giving said instruction, the defendant, by its attorney, excepted before the jury retired to consider of their verdict.

"Defendant's instruction No. 8: The jury are further instructed that if they believe from the evidence that the plaintiff, Clifton Oliver, was a minor at the time of his employment by the defendant as a freight brakeman, yet the mere fact that the plaintiff was a minor does not of itself affect the liability of the defendant as to obvious defects and dangers, unless the jury further believe from the evidence that the plaintiff was of an unsuitable age to be exposed to the risks of his employment (and that if the jury further believe from the evidence that the plaintiff was a minor, and engaged to work for the defendant as a brakeman, that then the risks of such employment were incidental to the work, so far as the plaintiff was competent to comprehend and appreciate them.)" But the court refused to give said instruction, but modified the same by striking out thereof the words in parentheses, as shown above, and gave said instruction as modified. To which ruling of the court in refusing to give said instruction as asked for, and giving the same as modified, the defendant, by its attorney,

excepted before the jury had retired to consider of their verdict.

"Defendant's instruction No. 9: The jury are further instructed that, if they should believe from the evidence that the plaintiff was not cautioned and warned by the agents of the defendant of the dangers incurred by him in coupling cars, yet if they further believe from the evidence that the plaintiff knew, from the nature of the work of coupling, or otherwise, all the dangers of which he could have been warned, then he could not have been prejudiced by a failure to instruct as to such known and apparent dangers." To the giving of which instruction the plaintiff, by counsel, objected, and the court sustained said objection, and refused to give said instruction. To which ruling of the court in refusing to give said instruction to the jury the defendant excepted before the jury retired to consider of their verdict.

"Defendant's instruction No. 10: The jury are further instructed that, while it was the duty of the defendant to make and promulgate proper rules for the protection of its employes, yet it was not required that the defendant should see to it, personally, that notice came to the knowledge of all those to be governed thereby, and that, if the defendant exercised due care and diligence in choosing competent servants to receive and transmit the necessary rules, the negligence by such servants in the performance of it is a risk of the employment that the plaintiff took when he entered the service of the defendant." To the giving of which instruction the plaintiff, by counsel, objected, and the court sustained said objection, and refused to give said instruction. To which ruling of the court in refusing to give said instruction to the jury the defendant excepted before the jury retired to consider of their verdict.

"Defendant's instruction No. 20: The jury are instructed that, if they believe from the evidence that the injury to the plaintiff was caused by the negligence of Brakeman Joseph Place, then in such case such negligence was the negligence of a fellow servant, and for which negligence no recovery can be had against the defendant in this cause." But the court refused to give said instruction as asked for, but

modified the same by adding to said instruction the following language, "Unless they further believe that the plaintiff was directed by Cooke, the yard master, to obey the orders of Place, and that he was injured while obeying such orders, without any fault or negligence on his part," and gave said instruction as modified.  To which ruling of the court in refusing to give said instruction as asked for, and in modifying the same and giving said instruction as modified, the defendant excepted before the jury retired to consider of their verdict.

After the evidence had been adduced the defendant moved the court to submit to the jury special interrogatories numbered from 1 to 13, inclusive, but the court refused to submit interrogatories numbers 1, 3, 4, 10, and 12, which several interrogatories read as follows:  "Special interrogatories:  No. 1.  What was the direct cause of the injury to the plaintiff?  No. 3.  If the plaintiff had been furnished with a coupling stick, and he had used it in adjusting the link and making the coupling in the usual way, would the accident have happened?  No. 4.  If you answer the interrogatories above in the affirmative, state how the use of a coupling stick would have enabled the plaintiff to adjust the coupling pin.  No. 10.  What effect would it have had upon the attempt of the plaintiff to make the coupling, had he been furnished with, and had he used a coupling stick?  No. 12.  Was the danger arising to the plaintiff out of the coupling cars such as he, by reason of his age and experience and mental capacity, could at the time have realized, by the exercise of ordinary care on his part?"

But the court did propound special interrogatories, as asked for, Nos. 2, 5, 6, 7, 8, 9, 11, and 13, which were answered by the jury as follows:

"No. 2.  What was the plaintiff doing at the time his arm was caught between the cars?  Answer.  In attempting to complete a defective coupling.  No. 5.  Who directed the plaintiff to make the coupling attempted at the time of the accident?  Answer.  Joseph Place, who was delegated by Jas. Cook, he (Cook) representing the company.  No. 6. Was the plaintiff of sufficient age and mental capacity, at the time of his employment, to comprehend the dangers in-

cident to coupling cars? Answer. Yes; had he been furnished with the rules and regulations of the company. No. 7. Were any of the coupling appliances of defendant's cars out of repair? And, if you answer in the affirmative, state which, and how out of repair. Answer. The cars that plaintiff attempted to couple at the time of the accident were out of repair as regards coupling apparatus. No. 8. Was the locomotive (No. 4) which was in use at the time of the accident out of repair? And, if you answer in the affirmative, how out of repair? Answer. The evidence is conflicting on this point, and jury declines to answer No. 8. No. 9. Was the plaintiff cautioned by any of the employes of defendant as to the dangers to him arising out of attempting to couple cars? Answer. No; he was only told, generally, to be careful. No. 11. Was the plaintiff's injury caused by the negligence of the engineer in backing his engine without any notice or signal to the plaintiff? Answer. No; but no rules of the company, as printed were observed in this connection. No. 13. Under the evidence in this cause, could the plaintiff have used a coupling stick to insert the coupling pin in the drawbar, and through the coupling link, in the usual manner in which coupling sticks are used, and coupling pins adjusted? Answer. Yes. [Signed] W. P. Anderson, Foreman."

And to the refusal of the court to give said interrogatories Nos. 1, 3, 4, 10, and 12, the defendant, by counsel, excepted, and tenders its bill of exceptions No. 13, which it prays may be signed, sealed, and saved to it upon the record, which is accordingly done.

Now it appears that the plaintiff was employed to perform general work about the railroad trains in the yard near the shops at the city of Parkersburg, including the coupling of cars and shifting of trains. He was employed on the night force. He came on Saturday, and worked Saturday night, and came again on Monday, but did not report at the lower yard, and another man, by the name of McDonough, had been sent for to take his place. On Saturday night the witness Place, who was a brakeman, states that he told Mr. Cooke, in the presence of plaintiff, that the plaintiff would get killed; that he was a new man

there, and that he had not better make any couplings, or do anything more than he could possibly help; that he would be willing to do it all himself, that he did not want to see anybody get killed or hurt—and that plaintiff was not required to do any coupling that night. The witness Place, did the coupling, with the assistance of Cooke, and they told plaintiff to get on the first car, next to the engine, whenever they would be doing any switching; to get on top and stay there, and to be careful not to get knocked off; and to watch the signals, and to give the signals the same as they were giving them to him. That he was told not to do any work where he would be in danger. The witness Place was asked, "Had you any other conversation that evening with Mr. Oliver (the plaintiff) further than that which you have stated, when you told him you did not think he would get to work?" and replied, "No, Sir." Mr. Cooke, the yard master, states that, the first night the plaintiff was working, "I did not have him make any couplings at all. Had him on the engine part of the time, looking out for signals, and on the cars at the head end. Told him to watch Place, and to do as Place told him to do, for I could not be there all the time, my duties being all over the yard, and, whatever Place told him to do, for him to do it. Place was a brakeman, and I told Place not to let him make any couplings"—and that he did not see plaintiff the evening of the accident until after he was hurt. And when asked, "Did you know he was about the engine or cars at the time?" he answered, "No, sir; I did not know whether he had come over yet or not. Had sent for Mr. McDonough, to fill his place." And the witness Place says he saw the plaintiff go in to make the coupling, and gave the engineer a signal known as a "steady signal," so as not to hit the cars hard; that he does not recollect of giving plaintiff any directions to make any coupling that night.

Now, while it appears that Mr. Cooke, the yard master, told the plaintiff to watch Mr. Place, and do what he told him, yet when we look to the testimony of the plaintiff to see how he was treated by Mr. Place, the brakeman, in answer to the question, "What did you do that night?" (meaning Saturday night, the first night he

worked) he answered: "The principal thing the first few hours, was to watch them, to see what they were doing. Joe Place was doing most of the coupling; in fact, all. I attempted to make one coupling, and he told me not to; that he would make the couplings, as he was afraid I would get hurt. He told me not to do it; that he would show me how, and then I could do it." On the night of the accident the plaintiff states that he had made one coupling, and when some more cars came in "I made the coupling, and then stepped out from between the cars and looked down the track, and saw there was sixty feet or more space between the cars I had coupled and the engine and the other cars. I went in to set this pin that had never dropped when I made the coupling, and then they came back on me and caught me."

Counsel for plaintiff, in his argument, quotes one of the rules of the company, which says that "coupling by hand is strictly forbidden in all cases where a coupler can be used to guide the link or shackle, and each yard master, switchman, brakeman, or other employe who may be required to couple cars is required to provide himself with a coupler for that purpose." It is apparent, however, that the want of a coupling stick in this instance was not the cause of the injury. The link had already been guided into the drawbar, and the only difficulty was in getting the pin through the lower part of the drawbar, it having passed through the upper part and the link or shackle, and would have pulled the car as it was, but not, as the evidence shows without danger of breaking or bending the coupling pin. And the plaintiff, in his testimony, when asked, "Isn't that the work they do with a stick—adjust the pin?" answered: "No, sir; they put the link in with the stick, as I understand it, not the pin. You could not put the pin in with a stick." And Mr. Place says he afterwards adjusted the pin, showing thereby that there was no defect in the pin or drawbar. The contention on the part of the plaintiff was, and it is insisted on in the argument of his counsel, that the failure on the part of the defendant to furnish the plaintiff with a suitable and proper coupling stick was the proximate cause of the injury; and instructions Nos. 2 and 3 above

quoted were asked by the plaintiff upon that hypothesis, and, at his instance, were given to the jury.

This Court held in the case of *Bloyd* v. *Pollock,* 27 W. Va. 75, that "a court ought not to grant an instruction to a jury which is irrelevant, or tends to mislead them, and therefore a court ought not to grant an instruction to a jury which is based on an hypothesis in reference to the facts which there is no evidence to sustain. Nor should the court grant an instruction which is based on an hypothesis which there is some evidence tending to support, if such evidence is so weak that it would be the duty of the court to set aside the verdict as contrary to the weight of evidence if it was based solely on the assumption that such hypothesis was in fact true." So, also, in the case of *Winkler* v. *Railroad Co.,* 12 W. Va. 699, it was held to be error to instruct a jury hypothetically upon a state of facts when there is no evidence tending to prove such facts. Such instructions have a necessary tendency to prejudice the party against whose interest they are given, and to mislead the jury.

Now, the business of braking on a railroad, and es· pecially in the yards of the railroad shops, where so much coupling has to be done, is conceded to be attended with danger. When the plaintiff was employed, he says Mr. Cook told him to watch Joe Place, and to do whatever Joe Place told him to do. And when asked, "Did you know what you were going to do?" he answered, "I thought I did. I thought I was going up there to go to work as a brakeman." And when asked, "What did you think a brakeman had to do?" he answered, "I thought he had to couple cars and set brakes." He then knew that he was engaging in a business that was attended with danger. He was no novice. The evidence shows that he had been working in different employments for years. By his own testimony, he had worked in gold mines in Colorado, in iron mills in Kentucky, and part of the time working at the carpenter's trade. He says he was aware that, in his employment as brakeman, he would be required to couple cars and set brakes. True, he was inexperienced, but all men are inexperienced at first. A woman may read a cook book all her life, and not learn how to make good bread until

she puts her hands in the dough; and, as counsel for plaintiff in error remarks, a man can not learn to swim without going into the water. He was warned of the danger, and his testimony shows that he was fully aware of it. On his first night's work, Mr. Place did the coupling for him, in order that he might see how it was done and what his duties were.

As to the promulgation of rules, Bailey, Mast. Liab. p. 77, says: "The master's duty is to make and promulgate proper rules. It is not required that the master should see to it personally that notice comes to the knowledge of all those to be governed thereby. If there is due care and diligence in choosing competent servants to receive and transmit the necessary orders, the negligence by them in the performance of it is a risk of the employment that the co-employe takes when he enters the service." "The duty of the master is performed when he has provided beforehand rules explicit and efficient and has chosen agents with due care for their possession of skill and competency, and has used the best means of communicating such rules to his employes, according to prescribed general rules and regulations derived from the best evidence in such business." Citing *Slater* v. *Jewett*, 85 N. Y. 61, where it is also held that "the measure of a master's duty to his servant is reasonable care, having relation to the parties, the business in which they are engaged, and the exigencies which require vigilance and attention. He is not a guarantor of the safety of his servant." On page 84 the same author (Bailey, Mast. Liab.) says: "Every employe engaging for service must be presumed to know that railroad companies make and promulgate rules, and that it is his duty to acquaint himself with them. Due regard for his own safety should prompt him to do this, and it is quite doubtful whether a man could be said to be in the exercise of due care who failed to do so. It is a matter of common knowledge, and of which courts may take judicial notice." And, the law being as above stated, with regard to the promulgation of rules by the defendant, the court erred in giving instruction No. 1 asked for by the plaintiff, and instruction No. 10 asked for by the defendant and refused by the court should have been given as prayed.

In response to the special interrogatory No. 11 submitted to the jury, "Was the plaintiff's injury caused by the negligence of the engineer in backing his engine without any notice or signal to the plaintiff?" the jury answered "No, but no rules of the company, as printed, were observed in this connection." Now, if he was not injured by the negligence of the engineer in backing his engine, it surely is immaterial whether the engineer, in so doing, observed the printed rules or not; and, if the plaintiff was not injured by the carelessness or negligence of the engineer in backing his train, the only negligence that can be attributed to the defendant consisted in not furnishing the plaintiff with a coupling stick, as it is shown that the coupling apparatus, drawbar, coupling pin, *etc.*, were not defective, by the evidence of Place, who adjusted it and coupled the car afterwards, and the plaintiff himself says the coupling stick would have been of no service to him in settling the coupling pin. Yet, in response to interrogatory No. 13, the jury found that the plaintiff should have used the coupling stick to insert the coupling pin in the drawbar, and through the coupling link, in the usual manner in which coupling sticks are used and coupling pins adjusted, when the testimony of Mr. Place, who was an experienced brakeman, is that he never saw a coupling stick used to adjust the coupling pin. The witness Cooke also states that they do not use a coupling stick in adjusting the pin, and rule 606 provides that coupling by hand is strictly prohibited in all cases where a coupler (which is shown to mean a coupling stick) can be used to guide the link or shackle. It does not say to adjust the coupling pin. So the finding in response to interrogatory No. 13 is contrary to the evidence.

In response to interrogatory No. 6 the jury found that the plaintiff was of sufficient age and mental capacity at the time of his employment to comprehend the danger incident to coupling cars. The evidence shows that he was warned of the danger. Now, if there was any defect in the coupling apparatus, it consisted in the coupling pin being too large, which was shown not to be the case, by its being adjusted afterwards. But, if it was too large, the plaintiff, after trying to shake it down, came out from between the

cars, and looked for the engine, and then went back to put the pin through the lower jaw of the drawbar. If this pin was too large, there is no evidence which tends to show that the defendant knew it; and this Court held in the case of *Humphreys* v. *Railroad Co.* (W. Va.) 10 S. E. 42, that "a servant can not recover for an injury to him from such defective machinery or appliances unless the master knew, or ought to have known, of the defect, and the servant was ignorant of such defect, or had not equal means of knowledge." In the same case, "If an employe willfully encounters dangers which are known to him, or are notorious or apparent, the employer is not responsible for an injury occasioned thereby." See, also, *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. 53) in which this Court held that, "when a servant enters the employment of a master, he assumes all the ordinary risk incident to his employment, whether the employment is dangerous or otherwise," and that "if a servant willfully encounters dangers which are known to him, or are notorious, the master is not responsible for any injury occasioned thereby." See the opinion of Johnson, President, on page 153, 31 W. Va , and page 58, 6 S. E. and numerous authorities there cited, for the proposition. See, also, *Johnson* v. *Railway Co.*, 36 W. Va. 73 (14 S. E. 432) where this Court held that: "(1) A servant who seeks to recover for an injury which he claims resulted from defective machinery or appliances furnished by the master, to be used about the business in which the servant was employed, takes upon himself the burden of establishing negligence on the part of the master, and due care on his part; and, in order to entitle him to recover, he must overcome two presumptions: First, that the master has discharged his duty to the servant, by providing suitable machinery and appliances for the business, and in keeping them in condition; second, that the servant assumes all the usual and ordinary hazards of the business. (2) Such servant takes upon himself the burden of showing that the master had notice of the defect complained of, or that by the exercise of ordinary care, which he is bound to observe, he would have known of it, and that the servant was ignorant of such defect, and had not equal means of knowl-

edge. (3) From the mere fact that an injury results to a servant from a latent defect in the machinery or appliances of the business, no presumption of negligence on the master's part is raised. There must be evidence of negligence connecting him with the injury. The mere fact that machinery proves defective, and that an injury results therefrom, does not fix the master's liability. (4) Where an injury occurs to an employe of a railway company through a defect in the machinery or implements furnished to the employes of the company, knowledge of such defect must be brought home to the company, or it must be proved that the company was ignorant of the same through its own negligence or want of care, before the company can be made liable." Again, in the case of *Woodell* v. *Improvement Co.*, 38 W. Va. 23 (17 S. E. 386) fourth point of syllabus, this Court held that "when an employe on a construction train of a railroad company has knowledge of any danger connected with his employment which may be avoided by the use of ordinary care, and appreciates the danger to which he exposes himself if he continues in such employment after such knowledge, without protest or complaint on his part, or promise on the part of such railroad company that such danger shall be removed, he will be held to have assumed the risk of such danger, and to have waived all claims for damages in case of injury."

It is apparent from the testimony of the plaintiff himself that he was no infant of tender years. He had been subjected to experience not of the mildest form, in the mines of Colorado, and in the iron mills of Ashland, Ky. And, while he may have been inexperienced in railroading, he had been abroad in the world sufficiently to care for himself; was twenty years and six months old. And we must hold that, in entering this dangerous employment of brakeman on a railroad, he assumed the dangers incident to the employment.

The verdict found in the case is inconsistent with the findings in response to the interrogatories.

In the case of *Kerr* v. *Lunsford*, 31 W. Va. 663 (8 S. E. 495) twenty eighth point of syllabus, it was held that "an instruction should not be given, unless relevant, and it is

not relevant unless there was evidence tending to prove the facts on which the instruction was based." The verdict in this case, in my opinion, was rendered in pursuance of instructions predicated on facts supposed to exist, but which there was no evidence tending to prove, and the court erred in refusing instructions 5, 6, 10, and 20 asked for by the defendant; and for reasons above stated the judgment complained of must be reversed, the verdict set aside, and a new trial awarded.